**RM CROWE PROPERTY SERVICES COMPANY, L.P., Appellant,**

v.

**STRATEGIC ENERGY, L.L.C., Appellee.**

No. 05–10–00234–CV.

Court of Appeals of Texas, Dallas.

July 29, 2011.

Douglas Wade Carvell, Charles William Gameros, Jr., Hoge & Gameros, LLP, Dallas, TX, for Appellant.

John Matthew Sjoberg, Marc O. Knisely, Jackson, Sjoberg, McCarthy & Wilson, L.L.P., Austin, Thomas B. Mock, Whaley Letteer & Mock PC, Dallas, TX, for Appellee.

Before Justices BRIDGES, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice LANG–MIERS.

After a nonjury trial, the trial court found in favor of appellee Strategic Energy, L.L.C. on its breach-of-contract claim against appellant RM Crowe Property Services Company, L.P. and awarded Strategic actual damages, interest, and attorneys' fees. On appeal Crowe challenges (1) the trial court's adverse findings on Crowe's affirmative defenses of novation, modification, and waiver, and (2) the award of attorneys' fees. We resolve Crowe's issues against it and affirm the trial court's modified final judgment.

### BACKGROUND

The material underlying facts of this case are largely undisputed. Strategic supplies electricity to commercial properties and Crowe manages commercial properties. In 2005 Strategic and Crowe entered into a Power Supply Coordination Service Agreement (the Agreement), in which Crowe is identified as the "Buyer." Under the terms of the Agreement, Strategic agreed to provide electricity and related services to certain commercial properties listed in the Agreement "for which Buyer has the authority to purchase Electricity," and Crowe agreed to receive and pay for the electricity and related services. The Agreement also contains an integration clause stating that it "contains the entire understanding of the parties," and that it "may only be amended by a written instrument executed by both parties."

Rainier Metroplex Partners, L.P. owned five of the properties listed in the Agreement, and from the outset of the Agreement, Strategic received payments primarily from Rainier. After certain invoices became past due, Rainier asked Strategic if Rainier could set up a payment plan to pay off the outstanding balances. As a result, Rainier and Strategic entered into five separate payment plans to address the outstanding balances owed for each of the five properties (the Payment Plans). Crowe was not a party to the Payment Plans. The Payment Plans require Rainier to make certain payments to pay off the past-due invoices for each property. The Payment Plans also state that they do not amend the Agreement: "Nothing contained in the Payment Plan is intended or shall be construed to change or limit Strategic Energy's rights or Buyer's obligations under the Agreement."

After Rainier stopped making payments under the Payment Plans, Strategic terminated the Agreement and sued Crowe and Rainier asserting claims for breach of contract, unjust enrichment, and attorneys' fees. In response, Rainier and Crowe filed general denials and pleaded multiple affirmative defenses. After a nonjury trial at which Rainier did not appear, the trial court rendered judgment in favor of Strategic. After the parties submitted post-trial briefing and Strategic submitted affidavits in support of its claim for attorneys' fees, the trial court signed a modified final judgment against Crowe and Rainier, jointly and severally, for (1) $986,455.26 in actual damages, (2) $130,701.32 in attorneys' fees through trial, (3) $363 in expenses, (4) $45,000 in conditional appellate attorneys' fees, (5) $187,666.75 in prejudgment interest, and (6) postjudgment interest at the rate of five percent. In response to Crowe's timely request, the trial

court also issued detailed findings of fact and conclusions of law.

### CROWE'S AFFIRMATIVE DEFENSES

In its first three issues Crowe essentially argues that it conclusively proved its affirmative defenses of novation, modification, and waiver.[1] As a result, we construe Crowe's first three issues as challenges to the legal sufficiency of the evidence to support the trial court's adverse findings on those affirmative defenses.

■■■ "A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue." *Dallas Cnty. Constable Precinct No. 5 v. Garden City Boxing Club, Inc.*, 219 S.W.3d 613, 616 (Tex. App.-Dallas 2007, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001)). We first examine the record for evidence that supports the adverse finding, crediting favorable evidence if a reasonable fact-finder could, while disregarding all evidence to the contrary, unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dow Chem. Co.*, 46 S.W.3d at 241. If there is no evidence to support the adverse finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. The issue will be sustained only if the contrary proposition is conclusively established. *Id.*

### Novation

■■ In its first issue on appeal, Crowe argues that the Payment Plans constituted a novation because they "extinguished pre-existing claims" and "operated to discharge the Agreement." We do not agree.

■■ "Novation is the creation of a new obligation in the place of an old one, by which the parties agree that a new obligor will be substituted to perform the duties agreed upon by the old contract, while the original obligor is released from performing those duties." *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex.App.-Fort Worth 2003, no pet.). A party that raises the affirmative defense of novation must prove (1) the validity of a previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex.1999).

In this case, it is undisputed that Crowe was not a party to the Payment Plans. This undisputed fact negates the second element required for novation and supports the trial court's adverse finding on that affirmative defense. Moreover, the express terms of the Payment Plans themselves demonstrate that they were not agreements among Strategic, Rainier, and Crowe to extinguish Crowe's previous obligations under the Agreement—which negates the third required element. *See generally Russell v. Ne. Bank*, 527 S.W.2d 783, 786 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) ("To effect a novation by the substitute of one debtor for another and thereby release the first par-

---

1. Because Crowe does not challenge the trial court's finding of fact no. 8 ("Crowe failed to make all of the payments to Strategic required under the terms of the [Agreement]."), and instead argues that its breach of the Agreement was excused, we do not address

Crowe's general challenge to the trial court's conclusion of law no. 12 ("Crowe breached the terms of the [Agreement] by failing to make the payments to Strategic required therein.").

ty, there must be an agreement to that effect between all three parties."). Applying the appropriate standard of review, we conclude that the evidence supports the trial court's adverse finding on Crowe's affirmative defense of novation.[2] We resolve Crowe's first issue against it.

### Modification

■ In its second issue, Crowe contends that it proved the affirmative defense of modification. More specifically, Crowe argues that the "evidence at trial is clear" that the Agreement was modified by the parties' prior course of dealing and course of performance, and as a result of that modification, Strategic was required to look "only to the buildings for payment."

■ A party asserting an affirmative defense in a trial before the court must request findings in support of the defense to avoid waiver of its affirmative defense. *See Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex.App.-Dallas 2009, no pet.). If the trial court's findings do not include any of the elements of the defense asserted, the party must specifically request additional findings relevant to the affirmative defense. *See id.*

In this case, and unlike Crowe's other affirmative defenses at issue in this appeal, the trial court's findings of fact and conclusions of law do not address the elements of the affirmative defense of modification, and the record does not demonstrate that Crowe specifically requested additional findings of fact relevant to that defense after the trial court issued its findings of fact and conclusions of law. As a result, we conclude that Crowe has waived any error with respect to the affirmative de-

fense of modification. *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex.App.-Dallas 2007, no pet.) ("[Appellant's] modification defense was not preserved on this record for failure to request factfindings on it.").

### Waiver

■ In its third issue on appeal, Crowe argues that it proved its affirmative defense of waiver. More specifically, Crowe argues that Strategic waived its right to "pursue collection directly from [Crowe]" because Strategic sent invoices directly to the properties, accepted payments from Rainier, and "never object[ed] to that scheme of invoicing and payment." We do not agree.

■ "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Generally speaking, without an admission of waiver by the opposite party, it is difficult to prove waiver as a matter of law:

> Intent is the key element in establishing waiver. The law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference. In the latter situation, it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party [unequivocally] manifested its intent to no longer assert its claim. This is a particularly onerous burden.

*G.H. Bass & Co. v. Dalsan Properties-Abilene*, 885 S.W.2d 572, 577 (Tex.App.-

---

2. Our resolution of Crowe's first issue also resolves Crowe's general challenge to the trial court's findings of fact nos. 36 ("Strategic did not enter into a new agreement with Rainier to take the place of the [Agreement].") and 39 ("Strategic did not enter into any agreement with Rainier for the extinguishment of the [Agreement]."), and the trial court's conclusion of law no. 4 ("Strategic's right to collection of such indebtedness is not barred by novation.").

Dallas 1994, no writ) (internal quotation and citations omitted).

■■ In this case, although Strategic accepted payment from Rainier, there is no conclusive evidence that Strategic unequivocally manifested its intent to relinquish its rights against Crowe. And the fact that Strategic agreed to send invoices directly to the properties and accepted payment from Rainier does not demonstrate that Strategic waived rights under the Agreement as a matter of law. *See, e.g., id.* at 577–78 (defendant's waiver defense was not established as a matter of law because evidence that landlord accepted lower payments was not conclusive evidence that landlord waived its right to collect past-due payments). Applying the appropriate standard of review, we conclude that the evidence supports the trial court's adverse finding on Crowe's affirmative defense of waiver.[3] We resolve Crowe's third issue against it.[4]

### THE AWARD OF ATTORNEYS' FEES

In its fourth issue Crowe challenges the award of attorneys' fees. More specifically, Crowe argues that Strategic's evidence in support of its fee request was insufficient and that the fees awarded are excessive.

### Relevant Facts

As evidence in support of its request for attorneys' fees, Strategic filed two affidavits—an original affidavit and an amended affidavit—from its counsel, Matt Sjoberg.

In his amended affidavit, Sjoberg stated, in part, as follows:

- he is lead counsel for Strategic;
- he has been licensed to practice law in Texas since 1990;
- he has substantial trial and appellate experience in energy-related civil litigation matters and is familiar with usual and customary charges and services for breach-of-contract cases in Texas;
- his firm took the case over from another firm, Brown McCarroll, L.L.P., in late 2007, and he has reviewed Brown McCarroll's files and invoices;
- Strategic agreed to pay the lawyer at Brown McCarroll $200 per hour and agreed to pay Sjoberg $375 per hour;
- the novelty and difficulty of the case required Sjoberg and his predecessor at Brown, McCarroll to spend approximately 365 hours "investigating claims, drafting pleadings, discovery requests, and responses to discovery requests, taking depositions and taking other necessary actions to perform our legal services properly";
- Strategic incurred $130,701.82 in attorneys' fees and $4,776.21 in costs with Sjoberg's firm and $5,915 in attorneys' fee and $1,767.97 in expenses with Brown, McCarroll, for a total of $143,163 in attorneys' fees and costs;
- Strategic's reasonable and necessary attorneys' fees and costs are (a) $143,163 through entry of the judg-

**3.** Our resolution of Crowe's third issue also resolves Crowe's general challenge to the trial court's findings of fact nos. 20 ("Strategic did not expressly or impliedly release Crowe from its obligations under the terms of the [Agreement].") and 30 ("Strategic did not intentionally relinquish any right it has to collect the amounts due under the terms of the [Agreement] from Crowe."), and the trial court's conclusion of law no. 6 ("Strategic's right to

collection of such indebtedness is not barred by waiver.").

**4.** Our resolution of Crowe's first three issues also resolves Crowe's general challenge to the trial court's findings of fact nos. 13 ("Strategic is owed the sum of $986,455.26 for electricity it supplied to the properties listed on Exhibit B to the [Agreement].") and 41 ("Strategic is entitled to $187,665.75 in prejudgment interest.").

ment, (b) $30,000 for an appeal to this Court, and (c) $40,000 for an appeal to the Texas Supreme Court;

- the attorneys' fees charged in this case "are customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the amount and type of controversy, and the results obtained in securing a judgment in the amount of $986,292.28, jointly and severally, against [Crowe and Rainier]";

- he excluded from this total the $700 in attorneys' fees for 3.5 hours of work done by the attorney at Brown McCarroll for Strategic's claim against another defendant that was dismissed before trial—which involved the same transaction and operative facts and only required preparing a demand letter and serving discovery requests that were "virtually identical" to the discovery served on Crowe the same day;

- with respect to Strategic's alternative claim for unjust enrichment, (1) it consists of three short paragraphs in Strategic's Original Petition and expressly incorporates the factual allegations made in support of its breach of contract claim," (2) other than drafting those paragraphs, it required no distinct research or other drafting, (3) "[i]t is difficult if not impossible to segregate attorneys' fees associated with this unjust enrichment claim from those associated with Strategic's breach of contract claim owing to the fact that both claims arise out of the same set of facts," and (4) "[o]ut of an abundance of caution, it is my opinion that the time spent on this claim would have been far less than half of one percent of the total time spent in attorneys' fees incurred by Strategic in this lawsuit."

Crowe did not submit any controverting evidence. Instead, Crowe submitted a brief in opposition to Strategic's request, in which it referred to (but did not attach) various invoices. In its brief, Crowe argued that Strategic's requested costs should be reduced from $6,444.18 to $363. Crowe also argued that Strategic's attorneys' fees "should be substantially reduced from the amount requested" because the fees are not reasonable and because Sjoberg's affidavit (1) "does not attach the fee statements upon which it relies," (2) is conclusory, (3) lacks foundation, and (4) does not adequately segregate fees attributable to Strategic's contract claim. With respect to the reasonableness of the fees, Crowe argued, for example, that 44.50 hours reflected on certain invoices for "trial preparation" was excessive because the trial lasted approximately two hours. Crowe also argued that the requested conditional appellate fees were "excessive for a case with two witnesses, fewer than a [sic] fifteen total exhibits, and approximately 2 hours of testimony and argument." In its conclusion and prayer for relief, Crowe asked the trial court to disallow any fees based on Strategic's failure to properly segregate its fees. Alternatively, and based on its critique of various invoices, Crowe argued that the attorneys' fees incurred through trial should be reduced by $79,662.73 for a total award of $63,500.27. Crowe also argued that conditional appellate attorneys' fees should be reduced to $20,000 for an appeal to the court of appeals and $10,000 for an appeal to the Texas Supreme Court.

In its modified final judgment, the trial court stated that it considered the evidence and arguments of counsel and awarded Strategic (1) $130,701.32 in attorneys' fees and $363 in expenses through trial, (2) $30,000 in conditional appellate

attorneys' fees in the event of an unsuccessful appeal by Crowe or Rainier to the court of appeals, and (3) $15,000 in conditional appellate attorneys' fees in the event of an unsuccessful appeal by Crowe or Rainier to the Texas Supreme Court.

**Applicable Law and Standard of Review**

■■ "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for [ ] an oral or written contract." TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (West 2008). "If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 547 (Tex. 2009).

■■ Factors to guide a trial court in determining whether the fees are reasonable and necessary include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood the acceptance of the particular employment will preclude other employment; (3) the customary fees charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(b)). "Nothing suggests that these are required elements nor must a party present evidence as to each one." *Giron v. Baylor Univ. Med. Ctr.,* No. 05–

09–00825–CV, 2011 WL 149981, at *5 (Tex. App.-Dallas Jan. 19, 2011, pet. filed) (mem. op.). The trial court can also consider the entire record, the evidence presented on reasonableness, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Jarvis v. Rocanville,* 298 S.W.3d 305, 318 (Tex.App.-Dallas 2009, pet. denied).

■■ When a trial court sits as the trier of fact, the amount of a fee award generally rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Id.*

**Analysis**

■■ In its fourth issue Crowe makes three main arguments to support its contention that the award of attorneys' fees is improper. First Crowe argues that a party requesting attorneys' fees must provide the trial court with time records. To support this argument Crowe relies solely on the Supreme Court's statement in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley,* however, involved a claim for attorneys' fees in a federal civil rights action brought under 42 U.S.C. § 1988—not a claim for attorneys' fees under Texas law. Under Texas law, "billing records need not be introduced to recover attorney's fees." *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 692 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *see also In re A.B.P.,* 291 S.W.3d 91, 99 (Tex.App.-Dallas 2009, no pet.) (rejecting argument that evidence was insufficient to support award of attorneys' fees to appellee because appellee's attorney "did not submit any documentary evidence to support her testimony, such as her fee

agreement or billing statements"). Moreover, *Hensley* requires "evidence supporting the hours worked and the rates claimed," *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933, and in this case Sjoberg's amended affidavit states the hours worked and the rates charged.

Next Crowe argues that Strategic's fees were not adequately segregated. We disagree. The Texas Supreme Court has explained that to meet a party's burden to segregate its attorneys' fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 314 (Tex.2006) ("an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim"). In this case, Sjoberg stated in his amended affidavit that he segregated from Strategic's total attorneys' fees the $700 in attorneys' fees that were solely attributable to the dismissed defendant. He also stated that the hours worked relating solely to Strategic's alternative unjust enrichment claim were far less than one half of one percent of the total hours worked. After considering the amended affidavit and the parties' arguments, the trial court reduced Strategic's attorneys' fees through trial by $5,915. Moreover, there is no controverting evidence that Strategic's attorneys' fees were capable of further segregation.

■ Finally, Crowe argues that "application of the 1.04(b) factors invites significant reductions in the request for fees." We disagree. The record demonstrates that the trial court made certain reductions to the attorneys' fees and costs requested by Strategic in light of the evidence and arguments presented. We conclude that the evidence presented in this case supports the award of attorneys' fees and costs to Strategic. *See generally Flatrolled Steel, Inc. v. Jones,* No. 05–04–01175–CV, 2005 WL 1405742, at *1 (Tex. App.-Dallas June 16, 2005, no pet.) (mem. op.) (fact-finder's award of attorneys' fees will not be disturbed on grounds of excessiveness if there is probative evidence to sustain the award). As a result, and after considering all of the relevant factors in light of the appropriate standard of review, we cannot conclude that the trial court abused its discretion.

We resolve Crowe's fourth issue against it.[5]

## CONCLUSION

We resolve Crowe's issues against it and affirm the trial court's modified final judgment.

**5.** Our resolution of Crowe's fourth issue also resolves Crowe's general challenge to the trial court's findings of fact no. 17 ("Strategic incurred the sum of $131,064.82 in attorneys' fees and costs with the firms of Jackson, Sjoberg, McCarthy & Wilson, L.L.P. and Brown McCarroll, L.L.P. to handle the above-styled and number lawsuit."), and the trial court's conclusion of law no. 15 ("Strategic is entitled to an award of its reasonable and necessary attorneys' fees for the trial and any appeal of this breach of contract action pursuant to Section 38.001(8) of the Texas Civil Practice & Remedies Code.").